[No. 31525. Department One. May 10, 1951.]

TRUCK-TRAILER EQUIPMENT COMPANY, *Respondent,* v. S.
BIRCH & SONS CONSTRUCTION COMPANY, *et al.,*
*Appellants.*[1]

*J. Charles Dennis* and *John E. Belcher,* for appellants.

*Emory, Howe, Davis & Riese,* for respondent.

BEALS, J.—The plaintiff, Truck-Trailer Equipment Company, a Washington corporation, by its complaint in this action alleged the corporate existence of the defendants, S. Birch & Sons Construction Co., a corporation organized under the laws of the state of Montana, Al Johnson Construction Co., a corporation organized under the laws of the state of Delaware, and C. F. Lytle Co., a corporation organized under the laws of the state of Iowa, all three corporations being authorized to do business in the state of

[1] Reported in 231 P. (2d) 304.

Washington; that the three defendant corporations above named at all times mentioned in the complaint were doing business as joint venturers under the name of Birch-Johnson-Lytle, having their principal place of business in Seattle, King county, Washington.

That on or about December 31, 1946, plaintiff offered to perform services for the defendants consisting of steam cleaning, inspecting and checking seventy-three General Motors cargo trucks for a consideration of $123.29 per unit, or a total bid of $9,000.17, which offer was accepted in writing.

That plaintiff accomplished its work upon thirty-nine of the units, defendant paying plaintiff therefor the agreed price. That June 16, 1947, the defendants wrote plaintiff stating that no futher work was to be performed by plaintiff pursuant to the contract.

That plaintiff was at all times ready and able to finish the work on the remaining forty-four units and, by defendants' breach of the contract, plaintiff had suffered damage in the amount of $4,104.76 by way of necessary expenses incurred in preparation for the performance of the contract and loss of profits occasioned by defendants' breach thereof.

The complaint was later amended to read thirty-four units instead of forty-four, and by alleging damages in the sum of $3,371.86.

By their answer, the defendants admitted the making of the contract, that plaintiff had performed work thereunder as alleged in the complaint, and that, as alleged by the complaint, plaintiff had been notified by defendants, June 16, 1947, that no further work was to be performed by plaintiff.

The defendants denied that plaintiff had been damaged by any act or omission on the part of defendants and affirmatively pleaded that they were construction contractors employed in the territory of Alaska under contract with the United States of America and that December 12, 1946, there had been mailed to plaintiff and others an invitation for the submission of bids for cleaning, servicing, inspecting and

checking approximately seventy-two cargo trucks. That plaintiff had submitted its bid in writing, which was accepted by defendants December 31, 1946. That June 16, 1947, "a change order was prepared and delivered to plaintiff and final settlement made by defendants with plaintiff by reducing the number of trucks to be cleaned and inspected from 73 units to 39 units, and reducing the monetary amount of the work from $9000.17 to $4808.31," a copy of said change order being attached to the answer.

Paragraph V reads as follows:

"That in said purchase order No. S. 1339, it is provided on the reverse side thereof:

" 'The performance of work under this contract may be terminated by Birch-Johnson-Lytle whenever the Contracting Officer representing the United States of America, having authority over Contract W-112 Eng. 1000 shall determine that such action is for the best interests of the Government. If this contract is so terminated, fair compensation within the meaning of the Contract Settlement Act of 1944 (Public No. 395, 78th Congress) as the same may be amended from time to time, will be provided for the vendor.'

"Defendants allege that the Contracting Officer did determine that termination of said contract with plaintiff should be had because of the delay in performance thereunder by plaintiff, and thereafter the change referred to in paragraph IV was issued and delivered to plaintiff, and there has been a complete accord and satisfaction."

Defendants prayed that the action be dismissed.

Plaintiff replied to the affirmative allegations of the answer, admitting that they had received the invitation to bid for the work and had submitted a bid in accordance therewith, denying that plaintiff had breached the contract by delay in performance thereof, and by a trial amendment to the reply, pleaded that the defendants were estopped to assert the defense that the contract contained a termination clause.

The action was tried by the court sitting without a jury and resulted in the entry of findings of fact and conclusions of law in favor of the plaintiff, followed by judgment in plaintiff's favor against all of the defendants in the sum of $3,171.86, together with costs.

From this judgment the defendants have appealed, making the following assignments of error:

"I. The trial court erred in refusing to admit in evidence defendants' Ex. 15 for identification, being the prime contract between defendants (appellants) and the United States War Department.

"II. The trial court erred in its finding X, infra.

"III. The trial court erred in its Conclusion of Law I.

"IV. The court erred in its Conclusion of Law II, and in entering judgment against defendants for any sum whatsoever."

It is admitted that plaintiff was paid in full for all work actually performed. This action was instituted for the purpose of recovering damages for breach of the contract by the defendants.

About the middle of December, 1946, the defendants invited bids on a proposed contract calling for "inspection" of seventy-three trucks. Plaintiff received a copy of this notice and a little later a letter making minor changes therein. December 30, 1946, plaintiff submitted a written bid offering to accomplish the work at the price of $123.29 per truck.

By a letter dated December 31, 1946, defendants notified plaintiff that its bid had been accepted and plaintiff immediately commenced to accomplish the contract and, by February 5, 1947, had completed the work on thirty-seven trucks. By June, 1947, two more trucks had been gone over, plaintiff having several times requested defendants to deliver the remainder of the trucks pursuant to the contract.

During the month of February, 1947, plaintiff received from defendants a document referred to in the record as a "purchase order." This document was identified at the trial as exhibit 10, but later, the defendants requested that this exhibit be withdrawn and a document marked exhibit 7 substituted therefor, appellants stipulating that the original of the document did not contain on the back any writing, while exhibit 7, as received in evidence, did contain such writing.

By the terms of this contract respondent agreed to

"Steam clean and open all necessary component parts of each unit sufficiently to thoroughly check and inspect, for

the purpose of determining all work and all parts required to place the basic units in good operating condition.

| | Unit Price | Amount |
|---|---|---|
| "73 Only G.M.C. Cargo Trucks, | | |
| 6x6 | 123.29 | 9000.17" |

Exhibit 7 is an accomplished printed form dated December 31, 1946, which refers to respondent's original bid and is signed by the "purchasing agent" on behalf of appellants. This is the original order which was accepted by respondent and pursuant to which respondent performed the work above referred to.

Under date June 16, 1947, appellants delivered to respondent a "change order" attaching thereto a copy of the original purchase order, the exhibit reading "Changed to Read 39 only G.M.C. Cargo Trucks, 6x6, Unit Price 123.29, Amount 4804.31," the exhibit then reading "Reason for change: (34) Units found to be beyond economical repairs Deductions 4191.86," showing the revised total in the amount above stated.

Appellants contended before the superior court, and again here, that the work which respondent assumed to accomplish constituted a war contract pursuant to Title 41, U. S. C. § 103c, and that appellants lawfully terminated the contract by the change order, exhibit 5, *supra*, which was approved by the Federal contracting officer.

Appellants contend that the trial court erred in refusing to receive in evidence the "prime contract" between the appellants and the Federal government, through the war department, which provided for the construction of "defense base facilities in Alaska at Fort Richardson."

After argument, the trial court received the document subject to further argument as to its admissibility in evidence in the case at bar.

In its memorandum opinion, the superior court ruled that the contract was not admissible in evidence and sustained respondent's objection to its admission.

The foregoing ruling of the trial court is the basis of appellants' first assignment of error. In this connection appellants call attention to the "Federal Contract Settlement Act," 41

U. S. C. § 103c, that section allowing cancellation of a war subcontract.

Appellants argue that the "change order," respondent's exhibit 5, *supra*, was effective as of its date to terminate the contract between the parties to this action. The exhibit, itself, nowise suggests that the agreement between the parties was a war contract or that the Federal government was any wise concerned therein.

In this connection appellants argue that respondent's exhibit 1, the invitation to bid, extended by appellants and accepted by respondent, clearly indicates that the job for which respondent bid shows that the operation was a Federal war contract because it states that the work called for by the contract was to be performed "under the general direction of and to the satisfaction of, a Corps of Engineers Inspector." Appellants call attention to the fact that respondent made no effort to follow Federal administrative procedures under the act in adjusting matters pursuant to the contract. Appellants also attack the court's ruling that the record contains no evidence showing that the agreement between the parties was a war contract, calling attention to the fact that the Federal contract settlement act does not provide that a prime contract must be terminated before a subcontract thereunder may be terminated, and that by a proclamation of the president of the United States, a state of war still existed December 31, 1946.

Appellants also contend that it cannot be determined from the record that respondent's profits, by accomplishing the work called for by the contract upon other trucks, would have been the same as upon the trucks which respondent inspected.

Respondent argues that the exhibits received in evidence disclose nothing which would suggest to respondent that the contract between the parties any wise concerned a war project or for any reason would be controlled by Federal statutes. The Federal contract settlement act applies only to war contracts.

Respondent also argues that as its contract with appellants is not subject to the Federal contract settlement act,

respondent's subcontract could be changed only by agreement between the parties. Respondent also contends that the fact that work done under the contract might be subject to inspection by an officer of the Corps of Engineers does not, of itself, make the subcontract a war contract.

Respondent contends that, in such a case as this, the proper measure of damages for breach of a contract for the performance of labor is the loss of profits which would have resulted from the completion of the work.

By a trial amendment Paragraph V of the complaint (in fact, this amendment referred to Paragraph VIII) was amended by reducing respondent's claim for damages from forty-four trucks to thirty-four. Examination of the pleadings in the light of the statement of facts, suggests a rather curious situation.

At the close of respondent's opening statement appellant's counsel called attention to the affirmative defense contained in appellant's answer, that the purchase order above referred to, which respondent accepted and under which the work was accomplished, bore on the back a statement to the effect that the performance of work under the contract might be terminated by appellants whenever the appropriate officer representing the United States should determine that such action was for the best interests of the government, and that if a contract should be so terminated, fair compensation would be provided for the vendor. The answer concluded by alleging that the contracting officer did determine that the contract should be terminated because of respondent's delay in performing same, and that there had "been a complete accord and satisfaction" between the parties.

Counsel for appellants then stated that these allegations were not based on facts and were not true, and that the purchase order which respondent accepted and on which it acted, actually contained no such provision, nor any writing whatsoever on the reverse. Counsel said that, in its opinion, this fact is not material because appellants' defense was that the work was not completed within a rea-

sonable time and that appellants had the right to cancel the contract for that reason.

During the course of the trial appellants' counsel stated that the delays in the performance of the contract to which he had referred, as above, were, in fact, in connection with a contract other than that in suit, and that in the action at bar there was no basis for a claim that respondent had delayed performance.

Apparently by these admissions counsel for appellants abandoned the affirmative defense as pleaded.

We shall now consider appellants' first assignment of error based upon the refusal of the trial court to receive in evidence appellants' exhibit 15, *supra*. The trial court based its refusal to admit the exhibit in evidence upon the fact that none of the instruments comprising the contract between the parties to this action refers to any prime contract between appellants and an agency of the Federal government.

The rule that parol evidence (which may include written matter) "is not admissible to add to, subtract from, vary, or contradict written instruments which are contractual in nature, and which are valid, complete, unambiguous, and not affected by accident, fraud, or mistake" (*Bond v. Wiegardt,* 36 Wn. (2d) 41, 216 P. (2d) 196) has frequently been followed by this court. This rule applies to documentary, as well as oral, evidence. 9 Wigmore on Evidence (3rd ed.) 4, § 2400.

In 2 Jones, The Law of Evidence in Civil Cases (4th ed.) 820, § 434, the rule is stated as follows:

"Stated in general terms, the force or effect of the rule is to require, in the absence of a showing of fraud, mistake or accident, the exclusion of parol or extrinsic evidence by which a party seeks to contradict, vary, add to or subtract from the terms of a valid written agreement or instrument."

The contract between the parties, with which we are here concerned, is evidenced by appellants' invitation to bid, respondent's bid, and appellants' acceptance thereof, all as disclosed by the record before us.

Examination of these documents discloses no reference whatever to any prime contract between appellants and the Federal government, the exhibits showing a complete contract between the parties to this action.

Paragraph (c) of appellants' invitation to bid states that the contractee shall "Inspect and thoroughly check, under the general direction of and to the satisfaction of, a Corps of Engineers Inspector, all component parts of each basic unit," but this statement, sent to prospective bidders December 12, 1946, exhibit 1, gives no notice that the work for which bids were requested was, in fact, a war contract.

The same is true concerning the "purchase order," exhibit 7, which contains the following:

"Feature: Inspection to Gov't. owned equipment (Automotive)
"Code: 1-594-X"

The Federal government, even during a period of actual war, engages in many operations which are not war contracts. *Richardson v. U. S.,* 86 Fed. Supp. 1019. Cargo trucks are used extensively by different government agencies other than the departments of war and navy.

Appellants do not contend that the contract here in question has ever been determined to be a war contract and there is nothing on the face of any document forming any portion of the contract which indicates that it concerned any war activity.

The Federal contract settlement act, 41 U. S. C. § 101 *et seq.,* has no application to any question here presented.

The trial court did not err in refusing to admit in evidence the prime contract offered as appellants' exhibit 15.

By assignment of error II, the appellants contend that the trial court erred in making finding of fact X, which reads as follows:

"There is no evidence to support the defendants' contentions, as set forth in Paragraph V of their Answer herein, that the contract between the parties contained a cancellation clause or was subject to the terms of the 'Contract Settlement Act.' Furthermore, the plaintiff had no notice of the terms of the contract between the United States Government and the defendants."

This assignment has, to considerable extent, been answered, *supra*. The following portion of the record is also pertinent to this assignment. Appellants argue that respondent knew of the terms of the contract between appellants and the Federal government. On motion of respondent, testimony concerning this matter was stricken by the trial court. Toward the close of the evidence at the end of the redirect examination of respondent's witness, T. H. Barnhart, appellants' counsel moved to dismiss the action, arguing that respondent had not exhausted its administrative remedies, that there could be no question but that respondent's claim was based upon a war contract, which was in the public interest, etc. After further argument by counsel for the respective parties, the trial court denied the motion "on the ground that the invitation to bid contains nothing designating this as a war contract," etc. Whereupon respondent's counsel moved "that the testimony that he brought out about knowledge that we knew and so on be stricken." The court granted the motion to strike, to which ruling the record discloses no objection or exception by appellants' counsel.

By assignment of error III appellants complain of the trial court's conclusion of law I, which reads as follows:

"That the contract between the parties herein is evidenced by the 'Invitation to Bid', and the 'Acceptance,' all of which are referred to in the Findings above, and that said contract does not contain a cancellation clause, and the 'Termination of War Contracts Act' is inapplicable to the said contract."

This conclusion of law correctly followed from the court's findings of fact and this assignment of error is without merit.

Pursuant to appellants' fourth assignment of error, *supra*, counsel argue that damages which may be recovered pursuant to the Federal contract settlement act of 1944 may not include loss of prospective profits.

As we hold that the Federal statute relied upon by appellants has no application to the facts of this case, appellants' argument is without merit. This court has adopted and followed the principle that in actions for breach of

contract, damages may be recovered for loss of profits. *Bogart v. Pitchless Lbr. Co.,* 72 Wash. 417, 130 Pac. 490; *Quist v. Zerr,* 12 Wn. (2d) 21, 120 P. (2d) 539; *Hole v. Unity Petroleum Corp.,* 15 Wn. (2d) 416, 131 P. (2d) 150. Examination of the cases cited by appellants in connection with the question now under discussion discloses that the authorities upon which they rely are not here in point, in view of the rule above referred to which prevails in this jurisdiction.

The record before us supports the judgment entered by the superior court, and the judgment is, accordingly, affirmed.

SCHWELLENBACH, C. J., HILL, GRADY, and DONWORTH, JJ., concur.